SO ORDERED.

SIGNED this 18 day of January, 2012.

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## NEW BERN DIVISION

IN RE:

**RICHARD R. DEXTER, JR.,**                     **CHAPTER 13**
**SANDRA J. DEXTER,**                           **CASE NO. 10-07071-8-RDD**

      **DEBTORS**

## ORDER GRANTING MOTION FOR TURNOVER
## OF PROPERTY OF THE ESTATE AND MOTION FOR SECTION 362(k) SANCTIONS

Pending before the Court is the Motion for Turnover of Property of the Estate and Motion for Section 362(k)[1] Sanctions filed by Richard R. Dexter, Jr. and Sandra J. Dexter (the "Debtors") on November 21, 2011 (the "Motion") and the Objection to Motion for Turnover of Property of the Estate and Motion for Section 362(k) Sanctions and Request for Hearing filed by JPMorgan Chase Bank, N.A. ("Chase") on December 22, 2011 (the "Objection"). The Court conducted a hearing on the Motion and the Objection in New Bern, North Carolina on January 5, 2012.

The Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code on September 1, 2010. On October 20, 2010, Chase filed proof of claim no. 6 in the amount of $106,329.71. The claim shows a prepetition arrearage in the amount of $18,704.79. Chase is a

---

[1]The Motion asks the Court impose "Section 362(h) Sanctions." This language is amended to "Section 362(k) Sanctions" to conform to the appropriate statutory reference.

secured creditor holding a promissory note secured by a first deed of trust on the Debtors' residence. The Debtors' Chapter 13 Plan (the "Plan") was confirmed on December 10, 2010. The Plan provides for payments of $1,298.00 per month for fifty-seven (57) months. The Plan was modified on October 20, 2011, from payments of $1,298.00 per month for fifty-seven (57) months to payments of $1,298.00 per month for nine (9) months followed by payments of $1,362.00 per month for forty-eight (48) months. Chase's claim is paid through the Plan pursuant to the Administrative Order Establishing Procedures Governing Post-Petition Conduit Mortgage Payments which became effective on January 1, 2010 (the "Conduit Mortgage Order").

On August 27, 2011, the Debtors' residence sustained damages caused by Hurricane Irene. The insurance company issued a check for damages sustained to the home in the amount of $9,052.93 payable jointly to the Debtors and Chase. The insurance company issued a second check for personal property damages in the amount of $1,376.54 payable jointly to the Debtors and Chase.

Upon receiving the insurance checks, the male debtor contacted Chase via telephone. He testified that he spoke to a woman who instructed him to follow specific procedures regarding the processing of the insurance claim funds. He testified that she directed him to access a website, www.mylossdraft.com, which provided instructions as to what Chase required in order to process the insurance checks. She instructed him that his residence was located in a FEMA declared disaster area. The website he was directed to provides: "FEMA - Declared Disaster Loss Drafts Procedures: Loss claims for up to $20,000.00 or less than or equal to 10% of the unpaid principal. If your mortgage account payments are current, please endorse the claim check and write your loan number on it. Please provide Chase with a copy of your adjustor's report or contractor's estimate and mail it with your endorsed claim check to [Chase]. When Chase receives the claim check and the proper

document, we will endorse and return the claim check to you within five business days."[2]

The male debtor testified that he followed these instructions and mailed the check and the insurance adjuster's estimate via express mail on September 22, 2011.

On October 3, 2011, the male debtor contacted Chase via telephone as Chase had not returned the endorsed checks. He was advised that Chase had received the insurance checks, but that Chase would not release the checks to the Debtors because their mortgage payments were not current. The Debtors testified that they believed their mortgage payments were current because they were current on their Plan payments to the Chapter 13 Trustee. Pursuant to Debtors' Exhibit 8, showing the "Receipts/Refunds for Debtor DEXTER, JR., RICHARD - R Case #1007071" the Trustee only disbursed a partial payment of $89.04 to Chase for the month of September. Exhibit 8, shows that in October, Chase was disbursed the remaining balance of the September payment and the October payment in full in the amount of $1,548.98. The Trustee's accounting shows the Debtors had timely sent all monthly payments to the Chapter 13 Trustee since the filing of the case and the

---

[2]Chase introduced into evidence procedures on the Chase website, www2.bankone.com/presents/preview/MortFAQsRe.html, that provide the same instructions, but the threshold amount for the claim is $10,000.00 rather than $20,000.00. The instructions provide that when the claim amount is less than $10,000.00, "[i]f your mortgage payments are current, please mail the unendorsed check and a copy of the Adjuster's Report to the address listed below. When we receive it, we'll endorse and return your check within ten business days. If your mortgage payments are not current, please call us at 1-866-742-1461 for assistance with your claim." Additionally, the male debtor testified that around the first or second week of October he received from Chase in the mail a form entitled "Loss Draft Procedures." The form provides that for insurance claims up to $10,000.00 or less than 10% of the unpaid principal balance, "[i]f your mortgage payments are current, please submit the following items for Chase to process the release of your funds: [1] a copy of the insurance adjuster's estimate [and] [2] the unendorsed insurance claim check. When we receive the claim check and the required documents, we will endorse the check on behalf of Chase and return it to you." Because the Court finds the real property insurance claim in which Chase has an interest totals less than $10,000.00, it makes no difference whether the threshold claim amount is $10,000.00 or $20,000.00.

Debtors were current on their Chapter 13 Plan payments.

On October 12, 2011, Chase's counsel informed Debtors'counsel via email that Chase's system did not show that the insurance checks were ever received.  Additionally, as of December 14, 2011, when Chase filed their Response in Opposition to Motion for Turnover of Property of the Estate and Motion for Section 362(k) Sanctions, which was later withdrawn, Chase stated that it "[had] not received any insurance checks . . . from the Debtors as of the date of this response."[3]

The male debtor testified that Hurricane Irene caused roof damage, vinyl siding to come off the residence, and the front door to come off its hinges. He testified that he completed some of the repairs on his own and the only remaining repair to be made was the roof damage. Leaks continue to occur when it rains.

Even though the Debtors notified Chase that they were represented by counsel and that they were Debtors in a Chapter 13 proceeding, Chase continued corresponding directly with the Debtors via telephone and mailings. Debtors' counsel was never included on any of the mailings sent to the Debtors.

The Debtors argue that the insurance proceeds should be immediately turned over to the Debtors because they complied with Chase's procedures for processing the insurance claim funds. Chase argues that because the Debtors' mortgage payments were not current and because the

---

[3]The Response in Opposition to Motion for Turnover of Property of the Estate and Motion for Section 362(k) Sanctions, was filed by Brock & Scott, PLLC on behalf of Chase on December 14, 2011.  This Response was withdrawn on December 16, 2011.  On December 22, 2011, Nelson Mullins Riley & Scarborough ("Nelson Mullins") filed a notice of appearance on behalf of Chase.  On that same day, Nelson Mullins filed the Objection to Motion for Turnover of Property of the Estate and Motion for Section 362(k) Sanctions and Request for Hearing, on behalf of Chase.

4

insurance claim checks totaled more than $10,000.00, the Debtors should have followed different procedures in order to obtain their insurance funds. As a result, the Debtors did not submit the correct documents to enable Chase to process the Debtors' insurance claim. Specifically, pursuant to Chase's procedures regarding insurance claim funds, Chase argues that the total insurance claim totaled between $10,000.00 and $20,000.00. Therefore the Debtors were required to submit: (1) the insurance adjuster's report or contractor's estimate; (2) the mortgagor's affidavit; (3) the contractor's estimate (when using a third party to complete the repairs); (4) the contractor's lien waiver; (5) the IRS form W-9 (required by the IRS); and (6) the inspection report showing the repairs were at least 90% complete. Furthermore, Chase argues the above loss draft procedures only apply if the mortgage payments are current. If mortgage payments are not current, the instructions provide: "please call us . . . for assistance with your claim."

The Court finds that the Debtors were current on their mortgage payments to Chase. Debtors' Exhibit 8 the "Receipts/Refunds for Debtor DEXTER, JR., RICHARD - R Case #1007071" evidences that the September Plan payment in the amount of $1,298.00 was received by the Trustee's office on September 6, 2011. Additionally, the male debtor testified that the Plan payment was mailed to the Trustee's lock box on August 29, 2011, which is consistent with the date written in the upper right hand corner of the Debtors' duplicate check. The Trustee represented that when a debtor mails a plan payment check, the check is first sent to Tennessee for processing before it is sent to the Trustee's office in North Carolina. The September 6, 2011 date represents the date the Trustee's office received the check.

Further, the Court finds that the insurance claim totaled less than $10,000.00. The Debtors' residence sustained damages resulting from Hurricane Irene. The insurance company issued two (2)

checks to the Debtors, one in the amount of $9,052.93 representing damages to the home and a second check in the amount of $1,376.54, representing personal property damages consisting of damage to a dog pen and a removable shed.  Both of the checks were made payable jointly to the Debtors and Chase.  The check in the amount of $1,376.54 should have been made payable solely to the Debtors.  Chase has no interest in damage to the personal property of the Debtors.  Therefore, the Court finds the total insurance claim for purposes of complying with Chase's loss draft procedures totals $10,000.00 or less.  Therefore, the Debtors were compliant in providing Chase with the necessary documentation to enable Chase to endorse the insurance settlement checks.

In correspondence, Chase never acknowledged the Debtors were Debtors in a Chapter 13 Plan.  Had Chase properly kept its records, Chase or its counsel could have easily contacted Debtors' counsel and/or the Chapter 13 Trustee regarding the Conduit Mortgage Order which requires debtors to include mortgage obligations in their plan payments.

Chase chose to ignore the Debtors' counsel, the implications of the Debtors being in a Chapter 13 bankruptcy, and the Conduit Mortgage Order requirements.  In addition, Chase should have been most aware of the significant damages suffered by homeowners in eastern North Carolina caused by Hurricane Irene.  Chase's concern for bringing the payments current over and above the necessity to have repairs completed on debtor's homes, which serve as collateral, is a misplaced priority especially when the homeowners are Chapter 13 debtors.  Insurance is purchased to cover property damage losses, not to ensure mortgage payments are current.  Had Chase been familiar with the operation of the Conduit Mortgage Order, Chase would have realized the Debtors were not delinquent on their mortgage payments pursuant to the terms of the Conduit Mortgage Order.  If Chase believed otherwise, Chase could have filed a motion to lift the stay in order to modify the stay

6

to allow the insurance proceeds to be applied to the debt. Chase filed a claim for its prepetition arrearages and its attorneys regularly appear in cases in the Bankruptcy Court for the Eastern District of North Carolina. Had this case been properly and promptly handled by Chase, these funds could have been sent back to the Debtors in order to fund the repairs to the Debtors' residence. All the while, the Debtors' roof continues to leak resulting in more damage to Chase's collateral, which is the Debtors' residence.

The Court finds the actions by Chase to withhold payment of the real property claim check in the amount of $9,052.93 and the personal property claim check in the amount of $1,376.54 constitute a willful violation of the automatic stay. Section 362(a) of the Bankruptcy Code imposes a stay on "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of a case under" title 11. 11 U.S.C. § 362 (a)(6). The Bankruptcy Code also provides that any "individual injured by any willful violation of a stay provided by this section shall recover actual damages . . . and in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362 (k)(1). This Court has held that "willfulness does not refer to the intent to violate the automatic stay, but the intent to commit the act which violates the automatic stay." *Lofton v. Carolina Fin. LLC (In re Lofton)*, 385 B.R. 133, 140 (Bankr. E.D.N.C. 2008) (citing *Citizens Bank v. Strumpf*, 37 F.3d 155 (4th Cir.1994), *overruled on other grounds* 516 U.S. 16, 11 (1995)). Furthermore, "[i]f the creditor intentionally acts and its actions violate the automatic stay, the creditor's acts are willful." *In re Peggy L. Jones*, No. 06-00380-8-RDD, at 3 (Bankr. E.D.N.C. June 27, 2007).

Chase clearly stated one reason for withholding payment of the insurance claim checks was because the Debtors were behind on their mortgage payments. The Court has found that the Debtors

were not delinquent in their mortgage payments and therefore this was not valid reason to withhold payment of the checks.   By Chase's own requirements, if the loss claim check totaled $10,000.00 or less and the Debtors were current on their mortgage payments, Chase would endorse the check and return it within ten (10) business days.  The Court finds that Chase committed a willful violation of the automatic stay by withholding the Debtors' insurance proceeds in an effort to collect prepetition arrearages.

Therefore, Chase is **ORDERED** to endorse the insurance checks in the amounts of $9,052.93 and $1,376.54 and disburse these funds made payable solely to the Debtors within five (5) days of January 5, 2012.  Further, Chase is hereby **DIRECTED** to pay sanctions to the Debtors in the amount of $10,000.00, and $5,000.00 in attorney's fees to Gillespie & Murphy, P.A.

**SO ORDERED.**

**END OF DOCUMENT**